## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

**CLARENCE A. ANTHONY**,

      Plaintiff,

v.                                                                Civil Action No. 7:20-CV-191 (HL)

**FRANCISCO J. BARBA ALVAREZ, J
& N EXPRESS, INC., et al.,**

      Defendants.

### ORDER

This case involves the collision of two eighteen-wheeler trucks on February 22, 2019. The parties do not dispute that Defendant Francisco J. Barba Alvarez ("Barba Alvarez") caused the accident. However, Defendants contend the undisputed material facts do not support Plaintiff Clarence A. Anthony's claims against Defendant J & N Express, Inc. ("J & N"), Barba Alvarez's employer, for negligent hiring, training, and supervision and negligent entrustment, nor do the facts support Plaintiff's claim for punitive damages.

Now before the Court is Plaintiff's Motion to Strike. (Doc. 18). Also before the Court is Defendants' Motion to Exclude Opinions of Plaintiff's Expert Whitney Morgan (Doc. 24) and Motion for Summary Judgment (Doc. 23). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, and with the benefit of oral argument, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Strike; the Court **DENIES** Defendants' motion to exclude

the causation testimony of Plaintiff's expert witness; the Court **GRANTS** Defendants' Motion for Summary Judgment.

## I.   MOTION TO STRIKE

Plaintiff moves the Court pursuant to Federal Rules of Procedure 26 and 37 to impose sanctions against Defendants for failure to disclose documents requested in discovery. Plaintiff contends Defendants' failure to produce the records caused Plaintiff undue hardship and prejudiced Plaintiff in these proceedings. Plaintiff urges the Court to strike Defendants' supplemental discovery production as a sanction for Defendants' alleged dilatory conduct. Defendants do not deny their production was tardy. However, Defendants assert the untimely production was not the result of an attempt to mislead Plaintiff. Defendants further state they worked diligently to remedy the late production to ensure Plaintiff could prepare for and conduct depositions prior to the close of discovery. Defendants therefore maintain sanctions are not warranted.

### A.   Background

Defendants served Plaintiff with initial disclosures on May 21, 2021. Surprised at the lack of documents, Plaintiff's attorney emailed defense counsel, who confirmed additional documentation, including Defendant Barba Alvarez's personnel file, would be forthcoming. Defendants provided Plaintiff with more documents on July 21, 2021. According to Plaintiff, obvious items were missing

from this production, including medical clearance cards, training materials, record of duty status, shipping papers, and mobile communications.

On August 11, 2021, defense counsel confirmed there were no further responsive documents to produce. Relying on the information available at that time, Plaintiff retained Whitney Morgan, an expert in federal motor carrier safety, who reviewed the documentation and offered opinions regarding Defendants' compliance with federal regulations. Plaintiff provided Defendants with Morgan's report on September 7, 2021.

Plaintiff deposed Jesus Cornejo, Defendant J & N's president and corporate representative, on October 18, 2021. During Cornejo's deposition, he testified about the existence of documents that had been requested but not produced. While Cornejo testified that he thought he provided the records to his attorney along with Barba Alvarez's application, it was clear to Plaintiff that defense counsel was equally surprised by his client's reference to these additional documents. (Cornejo Dep., p. 39); Doc. 18, p. 3 n.3). The parties stopped the deposition so that the records could be produced. These records included J & N's driver vehicle inspection policy, the fleet maintenance plan, hours of service policy, a file on FBA, progressive reporting driver safety management plan, progressive reporting drug and alcohol policy, proof of Barba Alvarez's receipt of hiring, and a safety rating upgrade request coversheet.

3

The parties reconvened on November 2, 2021, to continue Cornejo's deposition. Cornejo testified about a drug and alcohol policy booklet provided to Barba Alvarez upon hiring but not produced in discovery. The parties once more had to pause the deposition so that Cornejo could provide the twenty-five-page booklet. When the deposition resumed, it soon became apparent that there were even more unproduced documents. Cornejo apparently did not provide these records to his attorneys because he did not think the materials were relevant to the case. The parties ended Cornejo's deposition for a second time. On November 11, 2021, Defendants produced another one hundred fifty pages of documents, including Barba Alvarez's medical certification cards, driving record, random drug test results, and other records responsive to Plaintiff's discovery requests and relevant to the opinions of Plaintiff's expert.

### B.    Rule 26

Plaintiff argues Defendants violated Rule 26(a)(1)(A) and 26(g)(1) by failing to identify and to produce copies of all documents in Defendants' possession supporting their defenses. Rule 26(a)(1)(A) sets forth the general requirements for initial disclosures. The rule orders all parties produce either a copy or description of all documents in the disclosing party's "possession, custody, or control" that may be used "to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). All disclosures under Rule 26(a)(1), and every subsequent discovery request,

4

response, or objection, must be signed by an attorney of record, who "certifies to the best of that person's knowledge, information, and belief formed after reasonable inquiry," that any disclosure or response is complete and correct. Fed. R. Civ. P. 26(g)(1).

Violation of the Rule 26(g)(1) without substantial justification requires imposition of appropriate sanctions. Fed. R. Civ. P. 26(g)(3). The purpose of explicitly requiring sanctions is to "curb discovery abuse." Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1545 (11th Cir. 1993) (quoting Fed. R. Civ. P. 26(g) advisory committee's notes). Sanctions may include an order to pay reasonable expenses caused by the violation, including attorney's fees. Fed. R. Civ. P. 26(g)(3).

Defendants do not deny they are responsible for late disclosure of the documents in question. However, there is no evidence that defense counsel did not conduct a reasonable inquiry into the availability of his client's records prior to certifying the completeness of the initial disclosures. Plaintiff even noted defense counsel's surprise upon learning of the existence of additional documents. Additionally, it is evident from Jose Cornejo's deposition that he either did not understand his duty to produce certain documentation, thought he had produced the documents, or simply did not maintain the requested records in the regular course of his business. (Cornejo Dep., p. 24, 28-29, 39). Under the

circumstances presented the Court thus does not find sanctions warranted under Rule 26(g).

### C.   Rule 37

Plaintiff also contends Defendants are subject to sanctions under Rule 37. Under Rule 37(c)(1), when a party fails to produce evidence as required by Rule 26(a) or (e), the party may not use that evidence in support of a motion or at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Exclusion, however, is not mandatory. See Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc., 389 F.3d 1339, 1348 (11th Cir. 2004). In addition to or instead of exclusion, the court may (1) order payment of reasonable expenses, including attorney's fees, caused by the failure; (2) inform the jury of the party's failure; and (3) impose any other appropriate sanctions. Fed. R. Civ. P. 37 (c)(1)(A)-(C). It is within the trial court's discretion "to decide how best to respond to a litigant's failure to make a required disclosure under Rule 26." Taylor v. Mentor Worldwide LLC, 940 F.3d 582, 593 (11th Cir. 2019).

"[A]n individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" Devaney v. Cont'l Am. Ins. Co., 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). A discovery mistake is harmless "if it is honest[ ] and is coupled with the other party having sufficient knowledge that the

material has not been produced." In re Delta/Air Trian Baggage Fee Antitrust Litig., 846 F. Sup. 2d 1335, 1358 (N.D. Ga. Feb. 3, 2012) (quotation omitted). The non-disclosing party bears the burden of establishing whether a failure to disclose was substantially justified or harmless. See Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009).

While Defendants argue that the late production was not intentional and was otherwise harmless to Plaintiff's pursuit of his claims, Defendants nevertheless recognize the delay and inconvenience caused by the piecemeal production of documents. During the July 25, 2022 hearing on this matter, defense counsel reiterated a previous offer to absorb any expense related to the repeated depositions. The Court finds payment of these expenses to be a proper remedy, not the exclusion of the records as requested by Plaintiff. The Court accordingly **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Strike. (Doc. 18).

The Court **ORDERS** the parties to confer and to agree on a reasonable calculation of expenses and fees related to the additional depositions. Because it is apparent to the Court that Defendants previously offered to pay these expenses and that Plaintiff filed this motion rather than accepting Defendants' offer, the Court finds Plaintiff is not entitled to expenses and fees associated with filing this motion. Should the parties fail to reach an agreement, they should immediately contact the Court for further guidance.

## II.   MOTION TO EXCLUDE PLAINTIFF'S EXPERT

Defendants move the Court pursuant to Federal Rule of Evidence 702 to exclude the causation opinion of Plaintiff's expert witness, Whitney Morgan. Morgan is an expert in commercial motor vehicle compliance, enforcement, and safety operations. Plaintiff retained Morgan to offer opinions regarding the requirements of the Federal Motor Carrier Act and application of those protocols to proper hiring, training, and supervision in the trucking industry. To the extent Morgan intends to opine Defendants caused the accident, however, Defendants object. Defendants argue Morgan's causation testimony is not based on reliable reasoning or methodology and seeks to interject an improper legal conclusion.

### A.   <u>Daubert</u> Standard

A party relying on the testimony of a proposed expert witness bears the burden of laying a foundation for the admission of its expert's testimony by a preponderance of the evidence. <u>Corvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1256 (11th Cir. 2002) (quoting <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999)). Whether certain opinions may be offered as expert testimony is determined by the standard stated in Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert
has reliably applied the principles and methods to the
facts of the case.

As the Supreme Court clarified in <u>Daubert v. Merrell Dow Pharmaceuticals</u>,
a trial court must act as a "gatekeeper" and test the reliability and relevancy of
the proposed expert's opinions before determining whether they can be admitted
as expert testimony. 509 U.S. 579, 589–93 (1993). The trial judge must
undertake a "rigorous three-part inquiry" and decide whether: (1) a proposed
expert is qualified to competently testify concerning his opinions; (2) his
methodology is sufficiently reliable; and (3) his testimony would assist the jury,
through the application of scientific, specialized, or technical expertise, to
determine a fact in issue or understand the evidence. <u>United States v. Fazier</u>,
387 F.3d 1244, 1260 (11th Cir. 2004) (quoting <u>City of Tuscaloosa v. Harcros</u>
<u>Chems., Inc.</u>, 158 F.3d 548, 562 (11th Cir. 1998)).

"A district court's gatekeeper role under <u>Daubert</u> is not intended to
supplant the adversary system or the role of the jury." <u>Maiz v. Virani</u>, 253 F.3d
641, 665 (11th Cir. 2001) (internal quotation and citation omitted). Rather, the
objective of the gatekeeping requirement "is to make certain that an expert,
whether basing testimony upon professional studies or personal experience,
employs in the courtroom the same level of intellectual rigor that characterizes
the practice of an expert in the relevant field." <u>Kumho Tire Co., Ltd. V.</u>
<u>Carmichael</u>, 526 U.S. 137, 152 (1999). The district court has "substantial

discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." United States v. Majors, 196 F.3d 1206, 1215 (11th Cir. 1999).

### B.    Discussion

Whitney Morgan is a 1975 graduate of the University of Tennessee (Knoxville), where he received a Bachelor of Science degree in Business Administration with a concentration in Transportation. (Doc. 24-2, p. 14). From 1975 to 1982, Morgan worked as a Special Agent for the United States Department of Transportation, Federal Highway Administration, Bureau of Motor Carrier Safety in Birmingham, Alabama. (Id.). Since 1983, he has served as President of Motor Carrier Safety Consulting, Inc. in Birmingham. (Id. at p. 15). Morgan's professional experience and training includes commercial motor vehicle safety, motor carrier safety, motor carrier/vehicle regulator enforcement, accident investigation and reconstruction, commercial motor vehicle operations, inspection, and maintenance, cargo loading and securement, and hazardous materials shipping and transportation. (Id.).

Defendants do not question Morgan's qualification to testify competently as an expert in the field of commercial motor vehicle compliance and safety. However, Defendants aver that to the extent Morgan intends to offer an opinion regarding the cause of the accident, his opinion is not the product of reliable principles and methods. Defendants further assert Morgan's conclusion that

Defendants caused the accident "supplies the jury with no information other than his view of how the verdict should be read." (Doc. 24-1, p. 7). Plaintiff maintains Defendants' argument mischaracterizes Morgan's opinions and misstates the law governing the admissibility of expert testimony.

### 1. Methodology

Morgan's expert report draws the following conclusions:

> It is my opinion, within a reasonable degree of probability in the field of commercial motor vehicle compliance, enforcement and safety, that J & N failed to have the necessary safety management and controls in place and functioning to meet the safety fitness standards and to comply with the applicable safety regulations, with regard to Mr. [Barba Alvarez's] operations, which fell below the standard of care. Mr. [Barba Alvarez's] actions and/or inactions demonstrated a conscious disregard for safety operations, as well as for other motorists, including Mr. Anthony. Compliance with the applicable safety standards, which are established for safe operation and protection of the public, are a clear duty of all CMV operators/drivers and motor carriers.

(Doc. 24-2, p. 26).

Morgan bases his opinion on a number of reliable sources. First, Morgan reviewed the circumstances leading to the accident as outlined in the accident report. (Id. at p. 14, 15-16). Morgan then reviewed Defendant J & N's history, noting that from March 2019 to March 2021, J & N had a driver roadside out-of-service percentage of 8.8 % (National Average 5.52%) and a vehicle roadside out-of-service percentage of 21.6% (National Average 20.71%). (Id. at p. 16). According to Morgan's report, J & N had a conditional safety rating dating back to

2012 and a non-ratable review dated January 26, 2021. (<u>Id.</u>). By definition, "conditional safety rating" means that the motor carrier does not maintain adequate safety management controls to ensure compliance with safety fitness standards as delineated in the federal regulations. (<u>Id.</u>).

Morgan's report goes on to outline the federal regulations and to review Defendant Barba Alvarez's qualifications as a commercial driver and J & N's failure to maintain required driver qualification documents. (<u>Id.</u> at p. 18-19). Morgan notes failure to maintain driver qualification records "is a critical regulation violation, and demonstrates J & N's lack of compliance, knowledge and safety management controls" to ensure compliance with federal regulations. (<u>Id.</u> at p. 19). Finally, Morgan lists the standards for safe operation of commercial motor vehicles and points out how Barba Alvarez's conduct fell below the standard of care for commercial truck drivers. (<u>Id.</u> at p. 20-25).

Considering all of these factors, Morgan reaches the conclusion that Defendants' failure to abide by safety standards either caused or contributed to the cause of the accident. (<u>Id.</u> at p. 26). Contrary to Defendants' assertion, Morgan's intent is not to offer an opinion regarding how the accident physically occurred, which might, as Defendants suggest, require some expertise in accident reconstruction. Rather, the substance of Morgan's opinion is that Defendants failed to follow established safety protocols. That failure contributed to the circumstances underlying the accident.

12

Substantively, what Morgan intends to opine is that failure to comply with commercial motor carrier industry standards and federal regulations may lead to accidents. He reaches this opinion based on his vast experience in the industry and knowledge of the applicable rules and regulations. No accident reconstruction studies are necessary for Morgan to express these opinions. The Court is satisfied that Morgan employed proper methodology to reach his conclusions and **DENIES** Defendants' motion to exclude Morgan's expert testimony on this basis.

### 2.   Causation

Defendants next argue Morgan's causation opinion should be excluded because he "merely instructs the jurors on how to rule on causation," thereby invading the province of the jury. (Doc. 24-1, p. 8). While testifying experts may not opine as to the legal sufficiency of the evidence, Federal Rule of Evidence 704(a) provides, in relevant part, that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a); Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach.").

Here, Morgan offers an opinion that Defendants' failure to comply with industry standards and regulations either caused or contributed to the accident. The objective of Morgan's testimony is not to tell the jury how to rule but to

explain his understanding of the applicable rules and regulations and how those guidelines are intended to prevent accidents such as the one in this case. The Court accordingly finds no reason to limit Morgan's testimony and **DENIES** Defendants' motion to exclude Morgan's causation testimony.

## III.   MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants argue they are entitled to judgment as a matter of law on Plaintiff's claims for wantonness, negligent hiring, training, and supervision, and negligent entrustment. Defendants assert there is no evidence that Defendant J & N improperly hired, trained, and supervised Defendant Barba Alvarez, nor is there any evidence supporting Plaintiff's claim that J & N had actual knowledge of Barba Alvarez's alleged incompetence. Finally, Defendants maintain the record is devoid of any evidence of bad faith or willful or wanton action by Defendants justifying an award of attorney's fees or punitive damages.

### A.   Background

The Accident

Plaintiff Clarence A. Anthony is employed as a truck driver for Thompson Carrier in Opelika, Alabama. (Pl. Dep., p 16). On February 21, 2019, Anthony traveled to Bainbridge, Georgia to deliver a load for his employer. (Id. at p. 35). Anthony picked up a second load in Bainbridge to transport to Tifton, Georgia. (Id.). Anthony parked for the night at the Love's Travel Center in Tifton. (Id. at p. 36). He rose early the morning of February 22, 2019 and prepared to depart the

14

truck stop at 5:30 a.m. (Id.). Anthony was sitting in the driver's seat of his truck waiting to log in for the day when he saw the lights of another truck heading toward him. (Id. at p. 36-37, 41-42, 45). The other truck struck the driver's side near the fuel tanks of Anthony's parked truck. (Id. at p. 41, 42). The impact of the collision knocked Anthony to the passenger's side. (Id. at p. 45). He was momentarily dazed. (Id. at p. 45-48). When Anthony regained his composure, he saw smoke. (Id.). Afraid the truck might catch fire, Anthony acted quickly to exit the truck. (Id.).

The driver of the other truck was Defendant Francisco J. Barba Alvarez. Barba Alvarez was in route from Palm City, Florida to California. (Def. Dep., p. 35). Barba Alverez testified that the day before the accident, he slept in his truck for eleven hours in Palm City. (Id. at p. 48-49). He then drove the seven or eight hours leading up to the accident. (Id. at p. 39, 51).

Driving north on I-75, Barba Alvarez began to feel tired. (Id. at p. 50-51). He did not want to stop on an interstate off-ramp because doing so is dangerous and discouraged by the police. (Id. at p. 51-52). He therefore continued driving to the nearest truck stop—the Love's Travel Center in Tifton, Georgia. (Id. at p. 52). As Barba Alvarez pulled into the parking lot of the truck stop at approximately 5:08 a.m., he dozed off for a second. (Id.; Doc. 26-2, p. 3). When he awoke, Barba Alvarez saw Anthony's truck. (Def. Dep., p. 63). He applied his breaks but

was unable to stop. (Id.). Barba Alvarez believes he was moving at ten miles per hour or less. (Id. at p. 63-64).

Barba Alvarez's Employment History

At the time of the February 22, 2019 accident, Barba Alvarez was working for Defendant J & N Express, Inc. as a long-haul truck driver. (Def. Dep., p. 10). Barba Alvarez obtained his commercial driver's license in 2010. (Doc. 23-6, p. 24). He began working for J & N in 2011. (Doc. 23-5). Prior to hiring Barba Alvarez, J & N verified Barba Alvarez's commercial driver's license and employment history, conducted a road test, required him to submit to drug and alcohol screening, reviewed his medical certificate, and provided him with safety literature. (Docs. 23-5, 23-6, 23-7, 23-8, 23-9, 23-10, 23-11, 23-12). J & N reviewed Barba Alvarez's medical certification and driving record annually. (Doc. 23-6). Other than the accident that is the subject of this litigation, Barba Alvarez maintained a driving record devoid of any traffic citations or other major incidents. (Id.).

J & N is a small, California-based trucking company owned by Jesus Cornejo. (Cornejo Dep., p. 7, 9). The company owns eight trucks and employs twelve to fourteen drivers. (Id. at p. 11). Cornejo manages the company's daily business operations. (Id. at p. 12). He contracts with Simplex Group, a safety company, for permitting, licensing, random drug screens, and other safety and

regulatory issues. (Id. at p. 12-13). During the time period relevant to this case, Cornejo contracted with Progressive Reporting for these services. (Id. at p. 14).

Cornejo testified that a trip from Miami to California typically takes thirty-eight to forty hours. (Id. at p. 25). There are two drivers in each J & N truck, so while one drives the other sleeps, permitting the truck to be on the road for twenty-four hours a day. (Id. at p. 34). The drivers can drive for ten hours before they are required to stop and sleep. (Id. at p. 35).

J & N's drivers record their trips in eLogs rather than paper logbooks. (Id. at p. 18, 32). At the time of the accident, the company's electronic logbooks were stored through RoadLog, which was owned by Continental Company. (Id. at p. 33). Cornejo recalls reviewing Barba Alvarez's log entries after the accident. (Id. at p. 34). He noted nothing unusual about the trip log. (Id.). Plaintiff sent J & N a letter dated April 8, 2019, requesting that the logbooks be preserved. (Id. at p. 20). Cornejo indicated he has no memory of receiving this letter. (Id. at p. 21). He testified that if he did receive the letter, he would have forwarded it to his insurance company. (Id.). Unfortunately, RoadLog went out of business shortly after the accident, and the records they managed for J & N are no longer available to J & N. (Id. at p. 33).

**B.    Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as

to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### C.    Discussion

Defendants move for partial summary judgment as to Counts II and III of Plaintiff's Complaint. Count III sets forth a claim for Negligent and/or Wanton Hiring, Training, Supervision and/or Entrustment against Defendant J & N. This count is an amalgamation of several mutually exclusive theories of recovery. Regardless of the confusing presentation of Plaintiff's negligence claims against J & N, Georgia law clearly limits Plaintiff's ability to recover. Under Georgia law, absent a valid claim for punitive damages, where, as here, an employer does not contest an employee was acting within the scope of his employment at the time of the accident, a plaintiff's claims for negligent hiring, training, supervision, and entrustment are all subject to dismissal.

### 1.    Spoliation

In his response to Defendants' motion for summary judgment, Plaintiff raises the issue of spoliation. Plaintiff alleges Defendant J & N spoliated electronic logbooks. Plaintiff provided J & N with a preservation letter dated April 8, 2019, a few weeks after the February 22, 2019, collision. Plaintiff contends that despite notice of anticipated litigation, J & N failed to preserve the requested evidence. Plaintiff argues that evidence of spoliation thus "must overlay the Court's analysis of each issue" presented in Defendants' motion for summary judgment. (Doc. 26-1, p. 13).

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." Bridgestone/Firestone N. Am. Tire, LLC v. Campbell, 258 Ga. App., 767, 768 (2002). Such conduct "creates the presumption that the evidence would have been harmful to the spoliator." Am. Multi-Cinema, Inc. v. Walker, 270 Ga. App. 314, 318 (2004) (quotation marks and citation omitted). "Where a party has destroyed or significantly altered evidence that is material to the litigation, the trial court has wide discretion to fashion sanctions on a case-by-case basis." AMLI Residential Prop. v. Ga. Power Co., 293 Ga. App. 358, 361 (2008). However, "before a remedy for spoliation may be imposed, the party seeking the remedy must show that the allegedly spoliating party was under a duty to preserve the evidence at issue that was then breached." Cooper Tire & Rubber Co. v. Koch, 303 Ga. 336, 340 (2018). "[T]he duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence" and is triggered when the alleged spoliator "actually or reasonably should have anticipated litigation." Phillips v. Harmon, 297 Ga. 386, 396-97 (2015).

Barba Alvarez's logbooks are unquestionably relevant to this litigation. But Plaintiff's argument that J & N spoliated the electronic logbooks is not supported by the evidence. Jose Cornejo, the sole owner of J & N, testified that at the time of the accident all of J & N's electronic logbooks were maintained through a company called RoadLog. (Cornejo Dep., p. 32). Cornejo was able to review

20

Barba Alvarez's logbook entries immediately after the accident. (Id. at p. 33). However, RoadLog soon went out of business, and Cornejo lost access to the records. (Id.). Defendants' subsequent failure to produce the electronic logbooks in discovery demonstrates only that Defendants lacked access to the information. There is no evidence that J & N destroyed or altered the evidence. Moreover, the evidence reveals that the electronic logbooks were stored and controlled by a third party, not J & N. Plaintiff's assertion that sanctions should be imposed therefore lacks merit.

### 2.   Wantonness

Count II of Plaintiff's Complaint asserts a claim for wantonness. Defendants argue, and Plaintiff does not dispute, that Georgia law does not recognize a separate claim for wantonness. Rather, as Defendants state, wanton conduct by a party may raise a presumption of conscious indifference to the consequences of those actions for purposes of determining the appropriateness of punitive damages. O.C.G.A. § 51-12-5.1(b). Defendants accordingly are entitled to judgment as a matter of law as to Count II.

### 3.   Negligent Hiring, Training, Supervision, and Entrustment

Absent evidence supporting a meritorious claim for punitive damages against J & N, Plaintiff's claims for negligent hiring, training, supervision, and entrustment fail as a matter of law. The Georgia Court of Appeals has explained,

when an employer admits the applicability of respondeat superior, it is entitled to summary judgment on claims for negligent entrustment, hiring, and retention. The rationale for this is that, since the employer would be liable for the employee's negligence under respondeat superior, allowing claims for negligent entrustment, hiring, and retention would not entitle the plaintiff to greater recovery, but would merely serve to prejudice the employer. An exception exists for this general rule, however, where a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee or entrusting a vehicle to such employee. In such case, it cannot be said that the negligence claims against the employer are merely duplicative of the respondeat superior claim. Under these circumstances, the employer is not entitled to summary judgment on the negligent entrustment, hiring, and retention claims.

Mastec N. Am., Inc. v. Wilson, 325 Ga. App. 863, 865 (2014) (emphasis and citations omitted).

To succeed on his negligence claims against J & N, Plaintiff accordingly first must produce evidence sufficient to support an award of punitive damages for J & N's alleged negligence. Under Georgia law, punitive damages "shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant." O.C.G.A. § 51-12-5.1(c). Punitive damages thus

may only be awarded in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

O.C.G.A. § 51-12-5.1(b). "[N]egligence, even gross negligence, is inadequate to support a punitive damages award." Lindsey v. Clinch Cnty. Glass, Inc., 312 Ga. App. 534, 535 (2011) (quotation marks and citation omitted). In the context of a

claim for negligent hiring, supervision, or entrustment, a plaintiff may establish that punitive damages are authorized "by showing that an employer had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer has flouted a legal duty to check a record showing such violations." W. Indus. v. Poole, 280 Ga. App. 378, 380 (2006).

There is no evidence in this case that J & N either knew Barba Alvarez had numerous serious violations or that J & N failed to check Barba Alvarez's driving record. To the contrary, the undisputed evidence shows that J & N checked Barba Alvarez's driving record prior to employing him and then conducted annual checks. (Doc. 23-5, 23-6, 23-7, 23-8). There is no evidence that Barba Alvarez had any serious driving infractions before or during his employment with J & N. Plaintiff points to Barba Alvarez's pre-employment driving test as evidence that Barba Alvarez lacked some driving proficiency, namely with gear shifting. (Doc. 23-10). J & N conducted the road test in August 2011. (Id.). The accident did not occur until February 2019, seven and a half years later. There is no evidence that Barba Alvarez's driving skills did not improve during that time. There also is not evidence from which a reasonable jury could infer that J & N's knowledge that Barba Alvarez is not fluent in speaking or writing English amounted to conscious indifference to the consequences as there is no evidence linking Barba Alvarez's illiteracy to the cause of the accident.

Plaintiff also has not presented clear and convincing evidence from which a jury could infer that the accident was caused by Barba Alvarez's willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care. Barba Alvarez admitted in his deposition that he was drowsy. (Def. Dep., p. 50-51). There is no indication, however, that Barba Alvarez's fatigue was interfering with his driving prior to the accident. Rather, he made the conscious decision to pull off the interstate at the next available truck stop to avoid any issues. It is unfortunate that Barba Alvarez nodded off as he pulled into the parking lot, but there is no evidence of any aggravating circumstances authorizing an award of punitive damages.

The facts in this case do not support an award of punitive damages against either J & N or Barba Alvarez. Defendants accordingly are entitled to summary judgment as to these claims. Because Plaintiff's punitive damages claim against J & N fails, and because J & N does not deny responsibility for the actions of its driver under the doctrine of respondeat superior, Plaintiff's claims against J & N for negligent hiring, training, supervision, and entrustment are duplicative of Plaintiff's negligence claim against Barba Alvarez and fail as a matter of law.

### 5.   Attorney's Fees

Defendants move for summary judgment on Plaintiff's claim for attorney's fees. Georgia law permits attorney's fees where the defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary

24

trouble and expense." O.C.G.A. § 13-6-11. Ordinarily, the question of whether a party acted in bad faith presents a jury question. See Freightliner Chattanooga, LLC v. Whitmire, 262 Ga. App. 157, 163 (2003). However, where there is no evidence of bad faith, summary judgment on the attorney's fee claim is proper. Garrett v. Women's Health Care of Gwinnett, P.C., 243 Ga. App. 53, 55 (2000).

Plaintiff here has offered no evidence in support of his claim for attorney's fees. The Court therefore grants Defendants' motion for summary judgment as to this claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Strike (Doc. 18); the Court **DENIES** Defendants' motion to exclude the causation testimony of Plaintiff's expert witness (Doc. 24); the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 23).


**SO ORDERED**, this 9th day of September, 2022.

_s/ Hugh Lawson_____
**HUGH LAWSON, SENIOR JUDGE**

aks